UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02398-GPG

SAL CELAURO JR.,

       Plaintiff,

v.

FEDERAL EXPRESS GROUND,
ROBBY BAIER,
PAUL BURGELON, and
RYAN PELKY,

       Defendants.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### INTRODUCTION

Defendant FedEx Ground is an essential business whose continued operations during the COVID-19 pandemic allowed individuals in Colorado and throughout the country to shelter safely at home and obtain the goods needed to sustain their lives, including medical supplies and life-saving medicines. To ensure the safe and lawful operation of its package sorting facilities during the COVID-19 crisis, FedEx Ground complied with applicable local, state and federal guidance. This includes the Governor of Colorado's Executive Order dated April 17, 2020, which required that workers that "interact in close proximity with other employees or with the

public . . . [w]ear medical or non-medical cloth face coverings that cover the nose and mouth while working, except where doing so would inhibit the individual's health."[1]

Pro se Plaintiff Sal Celauro, Jr. is a former package handler at FedEx Ground's Henderson, Colorado package handling facility. Plaintiff alleges that, in late April or early May 2020, FedEx Ground and Defendants Baier, Burgeson and Pelkey[2] "violated [his] Right to make [his] own medical decisions by requiring [him] to wear a mask" during the COVID-19 pandemic. (Am. Compl. [ECF No. 8] 4.)

According to the Amended Complaint, Plaintiff refused to wear a mask at work. (Am. Compl. 4.) Plaintiff asserts that masks are not effective, masks can make people sick, the COVID-19 pandemic is "A Global False Alarm," the Governor of Colorado has no authority to issue executive orders to mandate mask wearing, the pandemic is a "sham," and "[t]his is all a fraud." (Am. Compl. 4, 7–8.) He also makes a contradictory and inconsistent allegation that his decision to not wear a mask is because of an unnamed disability. (Am. Compl. 8.) After his supervisors attempted to address Colorado's mask-wearing policy, Plaintiff resigned rather than wear a mask. (Am. Compl. 7–9.)

Plaintiff ultimately argues in his Amended Complaint that Colorado has no authority to institute a mask policy under the Colorado Constitution or statutory law. (Am. Compl. 11–14.) He requests that FedEx Ground pay each worker $1,000, Defendant Baier pay him $5 million,

---

[1] Exec. Order No. D 2020 039, *Ordering Workers in Critical Businesses and Critical Government Functions to Wear Non-Medical Face Coverings* 2 (Apr. 17, 2020), https://www.colorado.gov/governor/sites/default/files/inline-files/D%202020%20039%20Masks.pdf [hereinafter Exec. Order No. D 2020 039].

[2] The individual Defendants' correct names are Robby Baier, Paul Burgeson and Ryan Pelkey.

1

and Defendants Burgeson and Pelkey each pay him $2.5 million. (Am. Compl. 5.) In addition, Plaintiff suggests that "because the masks can cause death" he might charge Defendants with attempted murder if "Defendants do not want to correct their stance on this whole situation about wearing a mask." (Am. Compl. 13.)

This Court issued an Order to Show Cause on December 9, 2020. (ECF No. 18.) Defendants file this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, but the Court does not need to address this motion if the Court dismisses the Amended Complaint based on the Order to Show Cause.

## ARGUMENT

Plaintiff's challenge to the Governor of Colorado's mask policy under 28 U.S.C. § 1343 fails for multiple reasons: Plaintiff lacks standing against Defendants, Plaintiff sues under a jurisdictional statute that does not provide an independent cause of action, and the mask policy is constitutional. Plaintiff also makes two references to the Americans with Disabilities Act (ADA) that are inconsistent with the overwhelming substance of the Amended Complaint, but those references do not properly assert an ADA claim. Regardless, any ADA claim was not administratively exhausted and fails for additional reasons.

**I.  LEGAL STANDARD**

Although courts construe pro se complaints liberally, courts "should not be an advocate for a *pro se* litigant." *Futch v. Campbell*, No. 20-CV-00724-RM-GPG, 2020 WL 5899849, at *1 (D. Colo. June 1, 2020), *report and recommendation adopted*, 2020 WL 5893413 (D. Colo. Oct. 5, 2020). The Court may dismiss a *pro se* litigant's complaint for failure to state a claim upon

which relief can be granted or because the complaint lacks a cognizable legal theory. *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217, 1220 (D. Colo. 2004).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Courts ignore legal conclusions or "formulaic recitations of the elements of a cause of action" and then evaluate whether the remaining factual allegations plausibly suggest that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also Twombly*, 550 U.S. at 555; *Khalik*, 671 F.3d at 1190–91. "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

**II.  PLAINTIFF'S 28 U.S.C. § 1343 ACTION FAILS**

    **A.  Plaintiff Lacks Standing to Sue Defendants Regarding the Governor of Colorado's Mask Policy**

Plaintiff's Amended Complaint states that the "specific federal statute . . . at issue in this case" is "28 U.S.C. § 1343." (Am. Compl. 3.) However, Plaintiff lacks standing to sue Defendants—a private business and private individuals—about a state-ordered mask policy.

Standing doctrine identifies which disputes "are appropriately resolved through the judicial process," and includes prudential considerations that are "part of judicial self-government" and "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff bears the burden of

3

establishing the three elements required for the "irreducible constitutional minimum of standing." *Id.* at 560–61.

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560–61 (citations and footnote omitted). If Plaintiff cannot demonstrate standing, the Court lacks subject matter jurisdiction over Plaintiff's claims. *See Whitmore v. Arkansas*, 495 U.S. 149, 154–56 (1990).

Assuming *arguendo* that Plaintiff alleges an "injury in fact" for standing purposes, Plaintiff fails to establish the second two elements. He does not present a "causal connection" or establish that any court order against Defendants would redress his concerns.

       1.    *The Amended Complaint Does Not Plead the Required Casual Connection to Confer Standing.*

Plaintiff fails to establish a "causal connection" because the Governor of Colorado—not Defendants—implemented the statewide mask-wearing policy of which Plaintiff complains. There is "no standing when a plaintiff's alleged injury was caused by the decision of a third-party." *Nat'l Council for Adoption v. Jewell*, 156 F. Supp. 3d 727, 734 (E.D. Va. 2015) (citing *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997)). For instance, in *National Council for Adoption v. Jewell*, nonprofit adoption organizations lacked standing to challenge the U.S. Department of Interior's updated guidelines interpreting the Indian Child Welfare Act (ICWA) because state-court decisions (not the Interior Department's advisory guidelines) would

actually govern the ICWA's application. *Id.* at 736. In this case, Defendants are required to abide by the mask policy set forth by the Governor of Colorado under Executive Order D 2020 039. The Governor of Colorado's independent decision—not Defendants'—caused any alleged injury to Plaintiff.

        2.     *Redressability—and Therefore Standing—is Lacking in the Amended Complaint.*

Plaintiff also fails to establish the redressability requirement because any order against Defendants would not change whether Executive Order D 2020 039 is in effect. If Plaintiff seeks to invalidate Colorado's mask policy, he must sue the State of Colorado. "When redress[a]bility depends on a third party and there is no evidence suggesting a likelihood that the third party will take the action necessary to afford the plaintiff relief, the plaintiff lacks standing." *US Magnesium, LLC v. U.S. E.P.A.*, 690 F.3d 1157, 1166 (10th Cir. 2012). One case, for instance, held that a plaintiff lacked standing to sue the Interior Department because changing the Interior Department's decision would not redress the plaintiff's injury "unless and until" California made an independent decision. *See US Ecology, Inc. v. U.S. Dep't of the Interior*, 231 F.3d 20, 21, 24–26 (D.C. Cir. 2000). Because an order against Defendants here would not change Colorado's mask policy, Plaintiff lacks standing.

    **B.**    **28 U.S.C § 1343 Is a Jurisdictional Statute That Does Not Provide Plaintiff With an Independent Cause of Action**

As a threshold matter, Plaintiff cannot pursue a claim under 28 U.S.C. § 1343, a jurisdictional statute. Plaintiff references no other law or cause of action. "Where jurisdiction has been invoked under 28 U.S.C. § 1343 alone, the failure to state a cause of action upon which relief can be granted, i.e. failure to base the action on one of the Civil Rights Acts, requires a


dismissal for lack of jurisdiction." *Becker v. Evans*, 478 F. Supp. 729, 731 (M.D. Pa. 1979); *see Blaze v. Moon*, 315 F. Supp. 495, 496 (S.D. Tex. 1970) ("The jurisdictional grant of § 1343 does not stand alone; it creates jurisdiction only if the action is otherwise authorized by law."), *aff'd*, 440 F.2d 1348 (5th Cir. 1971).

      **C.**     **Plaintiff Fails to State a Plausible Civil Rights Action**

Even if the Court permits Plaintiff to pursue a civil rights claim under another statute, Plaintiff's claim still fails. To establish a claim under 42 U.S.C. § 1983, a civil rights statute that often relies on 28 U.S.C. § 1343 to establish jurisdiction, a plaintiff must establish that (1) the actor deprived another of rights, privileges or immunities secured by the Constitution and laws of the United States (2) while acting "under color of state law." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1232, 1235 (10th Cir. 2020). Plaintiff's civil rights claim fails on both elements. Plaintiff does not allege that he was deprived of his rights or privileges, and he also does not properly allege that Defendants were acting under the color of state law.

             *1.*     *Colorado's Mask Policy Is Constitutional*

Colorado's mask policy issued during a public health crisis does not violate the Constitution. "The latitude of officials 'must be especially broad' when acting 'in areas fraught with medical and scientific uncertainties'" such as the current pandemic. *See Carmichael v. Ige*, No. CV 20-00273 JAO-WRP, 2020 WL 3630738, at *5 (D. Haw. July 2, 2020); *see also Jacobson v. Massachusetts*, 197 U.S. 11, 25, 37–39 (1905) (deferring to state public health experts and concluding that mandatory smallpox vaccinations are constitutional). According to settled principles, the police power of a state must be held to embrace, at least, reasonable

regulations to protect the public health and the public safety. *See Jacobson*, 197 U.S. at 37–39. Constitutional rights "[do] not include liberty to expose the community . . . to communicable disease or . . . to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944); *see also Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1146 (D.N.M. 2020).

The Chief Justice of the United States recently addressed emergency restrictions due to the COVID-19 pandemic in a concurrence denying a church's request to hold larger gatherings:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38, 25 S.Ct. 358, 49 L.Ed. 643 (1905). When those officials "undertake[] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U.S. 417, 427, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–64 (2020) (Roberts, C.J., concurring).

Courts around the country have consistently applied *Johnson v. Massachusetts* to uphold orders designed to curb the spread of the COVID-19 pandemic. *See, e.g.*, *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 130 (6th Cir. 2020) (permitting Michigan's COVID-19 executive order to remain in force); *Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 2517093, at *1 (7th Cir. May 16, 2020) (permitting Illinois' COVID-19 order to remain in force); *McGhee v. City of Flagstaff*, No. CV-20-08081-PCT-GMS, 2020 WL 2308479, at *3–6 (D. Ariz. May 8, 2020) (denying preliminary injunction to enjoin

Arizona's COVID-19 order); *Givens v. Newsom*, No. 2:20-cv-00852-JAM-CKD, 459 F. Supp. 3d 1302, 1317 (E.D. Cal. May 8, 2020) (denying temporary restraining order that targeted California's COVID-19 order). Accordingly, Colorado's mask-wearing policy does not violate Plaintiff's civil rights in light of the ongoing and deadly pandemic.

        2.     *Plaintiff Does Not Allege That Defendants Were Acting Under the Color of State Law*

Plaintiff also does not satisfy the second prong of a civil rights claim—i.e., that Defendants were acting under the color of state law. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (explaining that a private actor is acting "under the color of state law" only if it is a "willful participant in joint activity with the State or its agents," the private actor is controlled by an "agency of the state," the private actor "has been delegated a public function by the State," or the government is "entwined in [the private actor's] management or control"); *see also* (Order to Show Cause [ECF No. 18] 6).

"[Section 1343] was not intended to have the effect of taking into federal control the protection of private rights against invasion by private individuals." *Monks v. Hetherington*, 430 F. Supp. 491, 493 (W.D. Okla. 1977); *see also Langmade v. City & Cty. of Denver*, No. 07-CV-02287 BNB, 2008 WL 123915, at *2 (D. Colo. Jan. 10, 2008) ("[I]f the shelter is a private entity, the shelter and its employees may not be sued in a civil rights action because they are not acting under color of state law."), *aff'd sub nom. Langmade v. Denver Police Dep't*, 276 F. App'x 852 (10th Cir. 2008). The Amended Complaint provides no facts to suggest that Defendants acted under the color of state law and, further, Plaintiff's response to the Order to Show Cause provides no further insight. (*See* ECF No. 20.)

Because Plaintiff fails to properly plead either prong of a constitutional claim for civil rights, this Court should dismiss the Amended Complaint.

### III. PLAINTIFF'S TWO RANDOM STATEMENTS ABOUT THE ADA DO NOT ASSERT A DISABILITY CLAIM THAT THE COURT SHOULD CONSIDER

Plaintiff's Amended Complaint makes two random assertions that he is protected by the ADA, but that does not plausibly state an ADA claim. Although there is a "general rule that *pro se* pleadings must be construed liberally," this rule "has limits and the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *See Vreeland v. Raemisch*, No. 18-CV-02685-GPG, 2019 WL 8128734, at *4 (D. Colo. Mar. 15, 2019) (quotation marks omitted), *aff'd*, 777 F. App'x 281 (10th Cir. 2019). Plaintiff has not pled any plausible facts to support an ADA claim, so the Court should not construe Plaintiff as pursuing a claim under that statute.

To state a claim under the ADA, a plaintiff must plausibly plead that he is covered by the ADA and that he suffered an adverse employment action, the defendant failed to accommodate his disability, or he was retaliated against. *See Delaney v. Lowe's Home Centers, LLC*, No. 19-CV-02481-NYW, 2020 WL 6743783, at *6–9 (D. Colo. Nov. 17, 2020).[3] Plaintiff does not reasonably assert the necessary allegations for the Court to consider an ADA claim. The

---

[3] To establish an ADA employment-discrimination claim, a plaintiff must establish that (1) he is disabled, (2) qualified to perform his essential job functions with or without accommodation, and (3) was terminated (or demoted) because of his disability. *Delaney*, 2020 WL 6743783, at *6. A plaintiff states a failure-to-accommodate claim if he shows that "the employer discriminated against the employee by not satisfying an affirmative, ADA-created duty to provide reasonable accommodations" once the employer had notice of those accommodations. *Id.* at *8. To establish a prima facie case of ADA retaliation, a plaintiff must establish that (1) he engaged in opposition to discrimination or sought an accommodation, (2) he suffered a materially adverse employment action, and (3) he suffered that adverse action because of his protected activity. *Id.* at *9.

Amended Complaint merely states that Plaintiff told two individuals at the terminal that he did not have to wear a mask because of a disability, "which I am not required to disclose under ADA and HIPAA." (*See* Am. Compl. 7–8.)

### IV. EVEN IF PLAINTIFF COULD SOMEHOW PURSUE AN ADA CLAIM AS MINIMALLY PLED, THAT CLAIM WOULD FAIL FOR MULTIPLE REASONS

    *1.    Any ADA Claim Would Fail Because Plaintiff Has Not Administratively Exhausted That Claim*

Even if Plaintiff somehow pled a cause of action under the ADA, Plaintiff failed to complete administrative exhaustion—which is fatal to the claim. The ADA requires a plaintiff to exhaust administrative remedies with the Equal Employment Opportunity Commission ("EEOC") before filing suit. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007); *Kahler v. Walmart Inc.*, No. 18-CV-3162-WJM-KMT, 2020 WL 127974, at *2 (D. Colo. Jan. 10, 2020). "[A] charge of discrimination submitted to the EEOC must contain general facts about the discrimination which gives rise to the legal claim, and a claim in federal court is limited by the scope of the administrative investigation that can reasonably be expected to follow the charge." *Kahler*, 2020 WL 127974, at *2. "In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Jones*, 502 F.3d at 1183. Courts dismiss unexhausted ADA claims with prejudice because amendment would be futile. *See Kahler*, 2020 WL 127974, at *2. Plaintiff pleads no facts suggesting that he sought administrative exhaustion and, for that reason, any ADA claim should be dismissed with prejudice.

    *2.    Any ADA Claim Would Fail Under Federal-Court Pleading Standards*

Furthermore, any ADA claim would fail under the well-establish pleading standards of *Twombly* and *Iqbal*. To determine whether an individual is protected by the ADA, courts typically engage in three inquiries:

> (1) determining whether the individual has an impairment or a record of impairment or is regarded as having such impairment; (2) identifying the activities the individual alleges to be affected by the impairment and determining whether they constitute "major life activities" under the ADA; and
> (3) determining whether the impairment substantially limits the major life activity.

*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1256 (10th Cir. 2001).

Plaintiff pleads nothing in support of any of these inquiries and merely makes an inconsistent, contradictory claim that he has a disability. The Amended Complaint repeatedly emphasizes that masks do not work, the pandemic is a "False Alarm," and the Governor's mask policy is illegal and unconstitutional. (*See* Am. Compl. 7–8.) Two random comments about a disability are inconsistent with the overwhelming substance of the complaint and do not plausibly assert that Plaintiff is protected by the ADA. *See Allbrandt v. Bank of Am., N.A.*, No. 14-CV-01977-CMA-KMT, 2015 WL 1186660, at *6 (D. Colo. Mar. 12, 2015) ("The court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading."). Moreover, Plaintiff states nothing about an impairment, a record of impairment, or "major life activities" limited by an impairment.

       3.      *Under Federal Regulations, an Employee With a Disability Who Poses a Direct Threat to Other Employees Is Not Entitled to Accommodation*

Even if Plaintiff asserted an ADA claim, administratively exhausted the claim, plausibly stated that he qualifies for ADA protection, and plausibly alleged an ADA claim (he did none of these things), Plaintiff's ADA claim still fails because an employee with a disability who poses a

direct threat to other employees is not entitled to accommodation. *See* 42 U.S.C. § 12113(a)-(b); *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290–91 (10th Cir. 2000) ("Under the ADA it is a defense to a charge of discrimination if an employee poses a direct threat to the health or safety of himself or others."); 29 C.F.R. § 1630.2(r) ("Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. . . . In determining whether an individual would pose a direct threat, the factors to be considered include: (1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm.").

"Masks are primarily intended to reduce the emission of virus-laden droplets ('source control'), which is especially relevant for asymptomatic or presymptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions." *Scientific Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, Centers for Disease Control & Prevention (Nov. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html. Although masks "help reduce the inhalation of these droplets by the wearer," the primary benefit is to those around the wearer. *Id.* Plaintiff appears to misunderstand this. His Amended Complaint argues that refusing to wear a mask is about "mak[ing] my own medical decisions" and that "[i]f masks work and [his coworker] is wearing a mask, then for me not to wear one should not matter." (Am. Compl. 7–8.) But refusing to wear a mask during the COVID-19 pandemic risks the health and safety of other individuals.

Plaintiff's refusal to wear a mask—regardless of whether this refusal is based on an unfounded belief that the pandemic is a "sham" or because of an unnamed disability—poses a direct threat to coworkers. An unmasked employee working in a shipping facility poses a substantial risk of harm to the health and safety of other individuals, and this threat cannot be eliminated or reduced by a reasonable accommodation. Moreover, the most current medical knowledge and best available objective evidence is that mask wearing is the best way to reduce the spread of COVID-19. Accordingly, Plaintiff cannot sustain an ADA claim.

## CONCLUSION

For all of the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) for failure to state a claim. Amendment would be futile because Plaintiff lacks standing and has not administratively exhausted any ADA claim, so this Court should dismiss the Amended Complaint with prejudice. *See Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (concluding that pro se parties should not be given leave to amend and dismissal should be with prejudice "where it is obvious that the plaintiff cannot prevail on the facts [he] has alleged and it would be futile to give [him] an opportunity to amend").

Dated:  December 29, 2020.                    Respectfully submitted,


*s/ Brian T. Ruocco*
Brian T. Ruocco
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:    303.244.1879
Email:   ruocco@wtotrial.com

Attorney for Defendants,
FedEx Ground Package System, Inc., Robby
Baier, Paul Burgeson and Ryan Pelkey

14

## **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on December 29, 2020, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** with the Clerk of Court using the CM/ECF system, and sent a copy of such filing to the following addresses:

Sal Celauro Jr.
3590 S. Pennsylvania Street Apt 318
Englewood, CO 80113

*Pro Se Plaintiff*

　　　　　　　　　　　　　　　　　　*s/ Martha G. Caudillo*